# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **ALEXANDER MINNEHAN,** <br> Plaintiff, | **CASE NO.:**   26-cv-2227 |
| **v.** | **Hon.:** |
| **ALLISON SEPECZI,** <br> **MOLLIE BOOKIE, and** <br> **CHLOE VANSINGEL,** <br> Defendants. | **PLAINTIFF DEMANDS A JURY** |

Collin H. Nyeholt (P74132)
LAW OFFICES OF CASEY D.
CONKLIN, PLC
4780 Okemos Road, Ste 2
Okemos, MI  48864
(517) 522-2550
collin@caseydconklin.com

_____

## **COMPLAINT and JURY DEMAND**

_____

1

## JURISDICTION AND VENUE

1.    This is a claim for violation of Michigan's common law as between multiple diverse parties.

2.    Plaintiff ALEXANDER MINNEHAN is a permanent resident of the State of New York. While he has lived temporarily as a student in the State of Michigan, he has maintained a permanent residence in New York and intends to return to New York following the completion of his education. He is therefore a New York domiciliary.

3.    Defendant ALLISON SEPECZI is currently a resident of Allendale, Michigan. Upon information and belief, she maintains a permanent residence in River Grove, Illinois and intends to return to same upon completion of her education. She currently has, and at the time of the events in the complaint had, neither residence nor permanent physical or legal presence in the state of New York. She therefore may be either a Michigan or Illinois domiciliary. In the alternative, there is no basis to conclude that she is, or at the time of any of the events in this Complaint was, a New York domiciliary.

4.    Defendant MOLLIE BOOKIE is, and at the time of all events described in this Complaint was, a permanent resident of Holland, Michigan. She currently has, and at the time of the events in the complaint had, neither residence nor permanent physical or legal presence in the state of New York. She therefore is a Michigan

domiciliary. In the alternative, there is no basis to conclude that she is, or at the time of any of the events in this Complaint was, a New York domiciliary.

5.    Defendant CHLOE VANSINGEL maintained a certain apartment in Allendale, Michigan at which the events described to follow occurred. She, upon information and belief, currently resides in Zeeland, Michigan. She currently has, and at the time of the events in the complaint had, neither residence nor permanent physical or legal presence in the state of New York. She therefore is a Michigan domiciliary. In the alternative, there is no basis to conclude that she is, or at the time of any of the events in this Complaint was, a New York domiciliary.

6.    Complete diversity exists between the Plaintiff, a New York domiciliary, and the Defendants, none of whom are New York domiciliaries.

7.    This claim stems from Defendants' actions towards Plaintiff that occurred in Allendale, Michigan.

8.    The Court may exercise subject matter jurisdiction over the claims, which exceed $75,000 in value, pursuant to 28 USC § 1332.

9.    Venue is properly laid in this court pursuant to 28 USC § 1391(b)(2).

## **ALLEGATIONS**

10. Plaintiff, as of 2024, was a student at Calvin University in Grand Rapids, Michigan.

11. In or about March of 2024, Plaintiff met Defendant SEPECZI. Plaintiff and SEPECZI socialized and went on several dates together. But Plaintiff consistently told her, both verbally and in written text messages, that he did *not* view their relationship as an exclusive, romantic relationship.

12. SEPECZI told Plaintiff several times that she had a history of mental illness, including diagnoses for anxiety and other conditions. Plaintiff observed unstable and erratic behavior from SEPECZI.

13. In or about July of 2025, and due to her behavior, Plaintiff elected to discontinue his interactions with SEPECZI. He proceeded to "block" her from texts, social media, and other communication methods.

14. SEPECZI responded to Plaintiff's rebuff by launching into a vengeful, organized, and ongoing scheme, coordinated with others, to cause him extreme emotional distress and irreparable damage to his reputation.

15. Plaintiff had, on one occasion, dated Defendant MOLLIE BOOKIE. However, they were never in any way, shape, or form in a committed long-term romantic relationship.

16. Plaintiff *thought* that he was a social friend with Defendant CHLOE VANSINGEL. However, there was never a romantic connection or interest to her at all.

17. In or about August of 2025, Plaintiff returned to school in Grand Rapids for the fall semester.

18. On August 17th, 2025, Plaintiff received a text message from Defendant CHLOE VANSINGEL inviting him to a supposed "back to school party" at her apartment in Allendale, Michigan. Plaintiff agreed to attend.

19. When Plaintiff arrived, he observed multiple individuals in the apartment including a heavyset male, a thinner male with a scruffy beard, and a heavyset female, none of whom he had met before and whose names he did not know.

20. Plaintiff went into the living room area of the apartment. He was then accosted by SEPECZI, BOOKIE, and VANSINGEL all wearing coordinated black dresses. They proceeded to confront him with several printouts from social media exchanges he and they had been involved in. They verbally called him a "cheater" and a "whore." They caused all of this to be audio and video recorded, despite his protestations.

21. After the recording ended, Plaintiff stated that he would like to leave. Ms. VANSINGEL told him, "You can't leave; these guys will do something to your car if you do." Plaintiff then was forced into the back room with VANSINGEL, who

proceeded to berate him for several minutes about how he needed to "reevaluate his life choices."

22.   After he was finally permitted to leave VANSINGLE's apartment, Plaintiff was quite shaken and in a state of significant emotional distress. He began sweating profusely, and experienced shortness of breath and  acute chest pain consistent with a heart attack. He proceeded to the emergency room at Trinity Health in Grand Rapids. Given  his symptoms, medical staff proceeded to give him multiple electrocardiograms and two different troponin tests to rule out heart attack. At 4:20 AM, he was released after it was confirmed that this was a panic attack, as opposed to a more severe cardiac incident.

23.   SEPECZI, using the account name "@allieballie73," proceeded to post the video she, BOOKIE, and VANSINGLE had procured on the social media website TikTok. She captioned the video "Girls stay safe, his name is Alex Minnehan!" She added a tag to the video labeling it as "to catch a cheater." She also "hash tagged" the video with "#rochesternewyork," "#cheaterwesternmichigan" and "#calvinuniversity" which would cause this video specifically to be shown to persons at Plaintiff's home city and college. All of this was designed to cause maximum adverse impact to Plaintiff's reputation and emotional state.

24.   She has subsequently re-posted the same video under other usernames.

6

25.  The video the Defendants posted received over a thousand views and dozens of comments.

26.  Defendant SEPECZI, using the moniker "allieballie73," has made numerous false and defamatory statements about Plaintiff on the website "snapchat." She claimed, knowingly falsely, that "we actually were exclusively talking from march 2024 to this july like end of july. [*sic*]." She went on to falsely stated that "we were together for more than a year" and she "found out he was cheating like the entire time[.]"

27.  SEPECZI also stated, again falsely, that Plaintiff "was trying to get with a girl going into her senior year of high school who is 17." In the states of Arizona, California, Delaware, Florida, Idaho, Kentucky, North Dakota, Oklahoma, Oregon, Tennessee, Utah, Virginia, and Wisconsin, where the age of consent is 18, this would amount to attempted statutory rape, a criminal act.

28.  SEPECZI has also made numerous false statements about Plaintiff on "the Tea App" under the username "peachypeach78877." She has used this social media program to create an individualized profile, bearing Plaintiff's image and likeness, to contact *others* who may be in contact with him for purposes of dating. She has continually made false and knowingly untruthful statements about Plaintiff through the app which are designed to cause others to ostracize him socially. For instance,

7

on one occasion, she claimed through the Tea app that Plaintiff "told me we were exclusive and I should delete all apps." On another, she claimed that Plaintiff is a

> Cheating slut. [W]as with him for a year and he was having sex with over ten girls :( loves freshly 18 virgins and makes girls fee bad ab them having a body when he was over 11-23. [M]ade me feel horrible after the fact saying we were never anything and now wants to sue me for warning a 17 year old[.] [*sic*]

29. Plaintiff has had others with whom he has corresponded reference Ms. SEPECZI's various false statements through her various online actions. Some of these individuals have cited same as a reason for discontinuing social contact with him.

30.  Given the ongoing nature of Ms. SEPECZI's conduct, it is reasonably believed, and herein alleged, that she has made other similar false statements as to Plaintiff's sexual infidelity which are presently unknown but will be found through discovery.

31.  Plaintiff has had persons he knows from his hometown refer to the various false statements Ms. SEPECZI has made and discussed herein. They have cited these as reasons for discontinuing social contact with him.

32. Plaintiff has suffered ongoing humiliation, embarrassment, and social ostracization as a direct and proximate result of Defendants' false statements.

33. Defendant BOOKIE and VANSINGLE knew it was SEPECZI's intention to post this video publicly in an attempt to damage Plaintiff's reputation and cause him extreme embarrassment and emotional distress. BOOKIE and VANSINGLE

8

approved, ratified, and participated in this action on SEPECZI'S part. They co-starred in her revenge video. And, Defendant VANSINGLE volunteered her apartment for the ambush, and personally lured Plaintiff to be present for it.

34. Plaintiff has suffered and will continue to suffer significant and ongoing emotional distress as a direct and proximate result of Defendants' actions described herein.

35. Prior to August 17, 2025, Plaintiff had no history of anxiety, depression, or mental illness of any kind whatsoever.

36. On August 26, 2025, Plaintiff was seen by Calvin University's Center for Counseling and Wellness. He was diagnosed with adjustment disorder with mixed anxiety and depressed mood, DSM-5 code F43.23. This diagnosis is characterized by development of clinically significant emotional symptoms (both anxiety and depression) in response to an identifiable stressor, occurring within 3 months of the stressor and causing impairment in functioning. Here, the stressor was the August 17, 2025, event described herein.

37. Plaintiff has been prescribed anti-depressants as a result of his diagnosis.

38. Plaintiff has incurred, and will continue to incur, medical expenses for treatment of the conditions that have resulted from Defendants' wrongful actions described herein.

9

## COUNT 1 – DEFAMATION
### *In Violation of the Common Law of the State of Michigan*

39.    Plaintiff incorporates by reference the factual statements and legal assertions contained in the previous numbered paragraphs as if fully restated herein.

40.    Defendants, as more fully detailed previously, have knowingly and intentionally accused Plaintiff of "cheating" on them, and being a "slut" and a "whore" by engaging in untoward sexual behaviors while in a committed relationship with them. These statements were knowingly and intentionally false or made with reckless indifference to the truth.

41.    A person who heard the Defendants' statements would reasonably understand them to assert that Plaintiff had engaged in behaviors evidencing a lack of chastity, which amounts to defamation *per se* at Michigan law.

42.    Defendant SEPECZI has also accused Plaintiff of attempting to engage in statutory rape of a 17-year-old, a criminal act, which is also defamation *per se*.

43.    The Defendants knew, or should have known, that the statements they made were false. In the alternative, the Defendants acted with reckless disregard to whether the statements were true. The Defendants therefore made these statements with bad faith and ill will.

44.    Plaintiff has suffered, and will continue to suffer, damage to his reputation and resulting social ostracization because of Defendants' false statements and therefore has demonstrated defamation *per quod*.

10

45.    Reasonably careful persons in Defendants' position would not have falsely stated that Plaintiff had "cheated" or otherwise acted in a "slutty" or "whorish" manner when, in fact, this had not occurred. The Defendants, therefore, were at least negligent in making the false statements identified herein.

46.    Plaintiff has suffered severe, ongoing, and demonstrable emotional distress as a result of Defendants' actions towards him. He suffered a severe panic attack, and symptoms mimicking a heart attack, on the night of August 17, 2025. And, he has been diagnosed with adjustment disorder with mixed anxiety and depressed mood, DSM-5 code F43.23, stemming from the ongoing online bullying and harassment.

## COUNT 2 – FALSE IMPRISONMENT
### *In Violation of the Common Law of the State of Michigan*

47.  Plaintiff incorporates the factual statements and legal conclusions contained in the previous numbered statements as if fully restated herein.

48.  On August 17th, 2025, the Defendants conspired together with currently unknown persons to lure Plaintiff to VANSINGLE's apartment under false pretenses. Once there, they prevented him from leaving by threatening him with damage to his vehicle.

49.  Defendants, by these actions, subjected Plaintiff to an unlawful restraint of his personal liberty and freedom of movement for an appreciable period of time.

50.   Plaintiff was imprisoned; that is, he was detained or confined by the Defendants and thereby deprived of his personal freedom or freedom of movement.

51.   The Defendants' restraint of Plaintiff's movement was carried out by an implied threat of physical force, given the presence of the numerous unnamed males at the apartment.

52.   The Defendants intended to restrain Plaintiff's movement and restrain him from leaving the apartment for an appreciable period of time.

53.   The Defendants' restraint of Plaintiff's movement was against his will.

54.   Plaintiff had neither committed a felony in Defendants' presence, nor had they been summoned by a peace officer to assist in making his arrest and, therefore, they had no right as a private citizen to detain his movement.

55.   The Defendants' restraint of Plaintiff's freedom of movement was unlawful.

### COUNT 3 –INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
*In Violation of the Common Law of the State of Michigan*

56.   Plaintiff incorporates the factual statements and legal conclusions contained in the previous numbered statements as if fully restated herein.

57.   Defendants conspired together to lure Plaintiff to VANSINGEL'S apartment under false pretenses, ambushed him with a video recorder, falsely accused him of being a "whore" and a "slut," falsely imprisoned him, and then proceeded to post the video of this online for the world to see.

58.  All of this was done with the purpose and intent of causing Plaintiff extreme emotional distress and permanent damage to his reputation.

59.  The Defendants' conduct was extreme and outrageous.

60.  The Defendants' conduct has caused Plaintiff  severe and ongoing emotional distress, as detailed previously.

61.  The Defendants' conduct caused Plaintiff damages as described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief from this Honorable Court:

1.  ECONOMIC DAMAGES including, but not necessarily limited to, medical expenses resulting from his ongoing treatment resulting from their actions;

2.  Such other COMPENSATORY damages may be appropriate to compensate Plaintiff for Defendant's unlawful conduct;

3.  EXEMPLARY  damages,  in  whatever  amount  the  Court  should  deem appropriate;

4.  ATTORNEY'S FEES, in an amount determined reasonable by the Court, so wrongfully incurred in order to remedy the violation of her rights described herein, pursuant to the various statutes identified herein;

5.  Pre and post judgment interest at the appropriate statutory rate, and

6. Such other relief as this Court may deem just and appropriate in law or in equity.

**PLAINTIFF DEMANDS A JURY**

Respectfully Submitted,

Dated:　8/3/2026　　　　　　　　　__*/s/ Collin H. Nyeholt*_____
　　　　　　　　　　　　　　　　　Collin H. Nyeholt,
　　　　　　　　　　　　　　　　　Attorney for the Plaintiff

VERIFICATION OF COMPLAINT

STATE OF ~~MICHIGAN~~ New York S~~e~~ )

~~Livingston~~ COUNTY    )

ALEX MINNEHAN, being sworn, says:

I verify, under penalty of perjury, that I have read and made this Complaint and attest that those facts stated of my own knowledge are true and those matters stated of which I have been informed I believe to be true after reasonable inquiry.

/s/ _Alexander C Minnehan_

Alex Minnehan

**Notary Seal**

Subscribed and sworn to by _Alexander C Minnehan_
before me the _15th_ day of _July_ , 2026.
Signature _____
Printed Name _Stephanie Cascio_____
Notary Public, State of ~~Michigan~~ New York, County of _Livingston_____
My Commission Expires _7/1/27_____

STEPHANIE R. CASCIO
Notary Public, State of New York
No. 01CA6394296
Qualified in Livingston County
Commission Expires 07/01/20 27

15