**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**

**ALEXANDER MINNEHAN,**
Plaintiff,

Case No.: 26-cv-2227

v.

Hon. Robert J. Jonker

**ALLISON SEPECZI,**
**MOLLIE BOOKIE, and**
**CHLOE VANSINGEL,**
Defendant.

---

Collin H. Nyeholt (P74132)
LAW OFFICES OF CASEY D. CONKLIN, PLC
4780 Okemos Road, Ste 2
Okemos, MI 48864
(517) 522-2550
collin@caseydconklin.com

Jade S. Doty (P88620)
SCHOLTEN FANT
Attorneys for Defendant Mollie Bookie
100 N. Third Street
Grand Haven, MI 49417
(616) 842-3030
jdoty@scholtenfant.com

Kellen J. Dykstra (P86491)
Christopher M. Wirth (P70174)
CORE LEGAL PLC
Attorney for Defendant VanSingel
180 Monroe Ave NW Ste. 405
Grand Rapids, MI 49503
(616) 855-2145
cwirth@corelegalplc.com

---

**DEFENDANT VANSINGEL'S ANSWER TO PLAINTIFF'S COMPLAINT**

---

Defendant Chloe VanSingel, by and through her attorneys CORE LEGAL, PLC, makes this her Answer to Plaintiff's Complaint and states as follows

1. This is a claim for violation of Michigan's common law as between multiple diverse parties.

**ANSWER: Admitted that Michigan law applies substantively and that Plaintiff appears to be alleging diversity jurisdiction as his basis for federal jurisdiction.**

2. Plaintiff ALEXANDER MINNEHAN is a permanent resident of the State of New York. While he has lived temporarily as a student in the State of Michigan, he has maintained a permanent residence in New York and intends to return to New York following the completion of his education. He is therefore a New York domiciliary.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

3. Defendant ALLISON SEPECZI is currently a resident of Allendale, Michigan. Upon information and belief, she maintains a permanent residence in River Grove, Illinois and intends to return to same upon completion of her education. She currently has, and at the time of the events in the complaint had, neither residence nor permanent physical or legal presence in the state of New York. She therefore may be either a Michigan or Illinois domiciliary. In the alternative, there is no basis to conclude that she is, or at the time of any of the events in this Complaint was, a New York domiciliary.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

4. Defendant MOLLIE BOOKIE is, and at the time of all events described in this Complaint was, a permanent resident of Holland, Michigan. She currently has, and at the time of the events in the complaint had, neither residence nor permanent physical or legal presence in the state of New York. She therefore is a Michigan domiciliary. In the alternative, there is no basis to conclude that she is, or at the time of any of the events in this Complaint was, a New York domiciliary.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

5. Defendant CHLOE VANSINGEL maintained a certain apartment in Allendale, Michigan at which the events described to follow occurred. She, upon information and belief, currently resides in Zeeland, Michigan. She currently has, and at the time of the events in the complaint had, neither residence nor permanent physical or legal presence in the state of New York. She therefore is a Michigan domiciliary. In the alternative, there is no basis to conclude that she is, or at the time of any of the events in this Complaint was, a New York domiciliary.

**ANSWER: Admitted in so much as Ms. VanSingel was and is a Michigan resident.**

6. Complete diversity exists between the Plaintiff, a New York domiciliary, and the Defendants, none of whom are New York domiciliaries.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

7. This claim stems from Defendants' actions towards Plaintiff that occurred in Allendale, Michigan.

**ANSWER: Ms. VanSingel denies the claim.**

8. The Court may exercise subject matter jurisdiction over the claims, which exceed $75,000 in value, pursuant to 28 USC § 1332.

**ANSWER: Admitted as to the purpose of 28 USC Sec. § 1332; denied that such claims colorably exist in this lawsuit.**

9. Venue is properly laid in this court pursuant to 28 USC § 1391(b)(2).

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

## ALLEGATIONS

10. Plaintiff, as of 2024, was a student at Calvin University in Grand Rapids, Michigan.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

11. In or about March of 2024, Plaintiff met Defendant SEPECZI. Plaintiff and SEPECZI socialized and went on several dates together. But Plaintiff consistently told her, both verbally and in written text messages, that he did *not* view their relationship as an exclusive, romantic relationship.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

12. SEPECZI told Plaintiff several times that she had a history of mental illness, including diagnoses for anxiety and other conditions. Plaintiff observed unstable and erratic behavior from SEPECZI.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

13. In or about July of 2025, and due to her behavior, Plaintiff elected to discontinue his interactions with SEPECZI. He proceeded to “block” her from texts, social media, and other communication methods.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

14. SEPECZI responded to Plaintiff’s rebuff by launching into a vengeful, organized, and ongoing scheme, coordinated with others, to cause him extreme emotional distress and irreparable damage to his reputation.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

15. Plaintiff had, on one occasion, dated Defendant MOLLIE BOOKIE. However, they were never in any way, shape, or form in a committed long-term romantic relationship.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

16. Plaintiff *thought* that he was a social friend with Defendant CHLOE VANSINGEL. However, there was never a romantic connection or interest to her at all.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim as to what Plaintiff thought and therefore it is denied. Ms. VanSingel admits that Plaintiff and Ms. VanSingel were never in a romantic relationship, but that Plaintiff made advances towards Ms. VanSingel.**

17. In or about August of 2025, Plaintiff returned to school in Grand Rapids for the fall semester.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

18. On August 17th, 2025, Plaintiff received a text message from Defendant CHLOE VANSINGEL inviting him to a supposed "back to school party" at her apartment in Allendale, Michigan. Plaintiff agreed to attend.

**ANSWER: Ms. VanSingel admits the claim.**

19. When Plaintiff arrived, he observed multiple individuals in the apartment including a heavyset male, a thinner male with a scruffy beard, and a heavyset female, none of whom he had met before and whose names he did not know.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

20. Plaintiff went into the living room area of the apartment. He was then accosted by SEPECZI, BOOKIE, and VANSINGEL all wearing coordinated black dresses. They proceeded to confront him with several printouts from social media exchanges he and they had been involved in. They verbally called him a "cheater" and a "whore." They caused all of this to be audio and video recorded, despite his protestations.

**ANSWER: Ms. VanSingel admits that Plaintiff went into the living room of her apartment. Plaintiff told Ms. VanSingel he had brought a bottle of wine for her and that he was going into the kitchen to open it for her. Ms. VanSingel was under the lawful Michigan drinking age, which Plaintiff knew. Ms. VanSingel admits that Defendant Bookie, Defendant Sepeczi, and Ms. VanSingel were in black party dresses because the party was a house-warming party for Ms. VanSingel moving into a new apartment. Ms. VanSingel adds that numerous other tenants were hosting similar parties at that same time for the same purpose. Ms. VanSingel admits that someone who was not Ms. VanSingel recorded the incident. Ms. VanSingel admits that there was a confrontation with Plaintiff because Defendant Bookie and Defendant Sepeczi stated that they discovered Plaintiff was dating both women at the same time. Defendant Bookie and Defendant Sepeczi supported their claims with information including what was in the alleged "printouts". Ms. VanSingel did not participate in creating the alleged printouts.**

21. After the recording ended, Plaintiff stated that he would like to leave. Ms. VANSINGEL told him, "You can't leave; these guys will do something to your car if you do."

Plaintiff then was forced into the back room with VANSINGEL, who proceeded to berate him for several minutes about how he needed to "reevaluate his life choices."

**ANSWER: Ms. VanSingel denies the claim.**

22. After he was finally permitted to leave VANSINGLE's apartment, Plaintiff was quite shaken and in a state of significant emotional distress. He began sweating profusely, and experienced shortness of breath and acute chest pain consistent with a heart attack. He proceeded to the emergency room at Trinity Health in Grand Rapids. Given his symptoms, medical staff proceeded to give him multiple electrocardiograms and two different troponin tests to rule out heart attack. At 4:20 AM, he was released after it was confirmed that this was a panic attack, as opposed to a more severe cardiac incident.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

23. SEPECZI, using the account name "@allieballie73," proceeded to post the video she, BOOKIE, and VANSINGLE had procured on the social media website TikTok. She captioned the video "Girls stay safe, his name is Alex Minnehan!" She added a tag to the video labeling it as "to catch a cheater." She also "hash tagged" the video with "#rochesternewyork," "#cheaterwesternmichigan" and "#calvinuniversity" which would cause this video specifically to be shown to persons at Plaintiff's home city and college. All of this was designed to cause maximum adverse impact to Plaintiff's reputation and emotional state.

**ANSWER: Ms. VanSingel denies that she produced the video and denies that she posted the video on social media.**

24. She has subsequently re-posted the same video under other usernames.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

25. The video the Defendants posted received over a thousand views and dozens of comments.

**ANSWER: Ms. VanSingel denies that she participated in any social media posting related to the incident. Ms. VanSingel lacks the information to either admit or deny the claim that any post received over a thousand views and dozens of comments, and therefore, it is denied.**

26. Defendant SEPECZI, using the moniker "allieballie73," has made numerous false and defamatory statements about Plaintiff on the website "snapchat." She claimed, knowingly falsely, that "we actually were exclusively talking from march 2024 to this july like end of july. [sic]." She went on to falsely stated that "we were together for more than a year" and she "found out he was cheating like the entire time[.]"

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

27. SEPECZI also stated, again falsely, that Plaintiff "was trying to get with a girl going into her senior year of high school who is 17." In the states of Arizona, California, Delaware, Florida, Idaho, Kentucky, North Dakota, Oklahoma, Oregon, Tennessee, Utah, Virginia, and Wisconsin, where the age of consent is 18, this would amount to attempted statutory rape, a criminal act.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

28. SEPECZI has also made numerous false statements about Plaintiff on "the Tea App" under the username "peachypeach78877." She has used this social media program to create an individualized profile, bearing Plaintiff's image and likeness, to contact others who may be in contact with him for purposes of dating. She has continually made false and knowingly

untruthful statements about Plaintiff through the app which are designed to cause others to ostracize him socially. For instance, on one occasion, she claimed through the Tea app that Plaintiff "told me we were exclusive and I should delete all apps." On another, she claimed that Plaintiff is a

> Cheating slut. [W]as with him for a year and he was having sex with over ten girls :( loves freshly 18 virgins and makes girls fee bad ab them having a body when he was over 11-23. [M]ade me feel horrible after the fact saying we were never anything and now wants to sue me for warning a 17 year old[.] [sic]

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

29. Plaintiff has had others with whom he has corresponded reference Ms. SEPECZI's various false statements through her various online actions. Some of these individuals have cited same as a reason for discontinuing social contact with him.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

30. Given the ongoing nature of Ms. SEPECZI's conduct, it is reasonably believed, and herein alleged, that she has made other similar false statements as to Plaintiff's sexual infidelity which are presently unknown but will be found through discovery.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

31. Plaintiff has had persons he knows from his hometown refer to the various false statements Ms. SEPECZI has made and discussed herein. They have cited these as reasons for discontinuing social contact with him.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

32. Plaintiff has suffered ongoing humiliation, embarrassment, and social ostracization as a direct and proximate result of Defendants' false statements.

**ANSWER: Ms. VanSingel denies that she has made any false statements.**

33. Defendant BOOKIE and VANSINGLE knew it was SEPECZI's intention to post this video publicly in an attempt to damage Plaintiff's reputation and cause him extreme embarrassment and emotional distress. BOOKIE and VANSINGLE approved, ratified, and participated in this action on SEPECZI'S part. They costarred in her revenge video. And, Defendant VANSINGLE volunteered her apartment for the ambush, and personally lured Plaintiff to be present for it.

**ANSWER: Ms. VanSingel denies that she has made any post. Ms. VanSingel admits that she asked Plaintiff over to her apartment with the intention of confronting him over his conduct with Sepeczi and Bookie in hope that Plaintiff would stop his advances. Ms. VanSingel denies that she participated in posting videos.**

34. Plaintiff has suffered and will continue to suffer significant and ongoing emotional distress as a direct and proximate result of Defendants' actions described herein.

**ANSWER: Ms. VanSingel denies this claim as it relates to her actions resulting in significant and ongoing emotional distress to Plaintiff, or any direct and proximate causation.**

35. Prior to August 17, 2025, Plaintiff had no history of anxiety, depression, or mental illness of any kind whatsoever.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

36. On August 26, 2025, Plaintiff was seen by Calvin University's Center for Counseling and Wellness. He was diagnosed with adjustment disorder with mixed anxiety and

depressed mood, DSM-5 code F43.23. This diagnosis is characterized by development of clinically significant emotional symptoms (both anxiety and depression) in response to an identifiable stressor, occurring within 3 months of the stressor and causing impairment in functioning. Here, the stressor was the August 17, 2025, event described herein.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

37. Plaintiff has been prescribed anti-depressants as a result of his diagnosis.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

38. Plaintiff has incurred, and will continue to incur, medical expenses for treatment of the conditions that have resulted from Defendants' wrongful actions described herein.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

**COUNT 1 - DEFAMATION**

39. Plaintiff incorporates by reference the factual statements and legal assertions contained in the previous numbered paragraphs as if fully restated herein.

**ANSWER: Ms. VanSingel incorporates paragraphs 1 through 38 of her answer as if fully restated above and herein.**

40. Defendants, as more fully detailed previously, have knowingly and intentionally accused Plaintiff of "cheating" on them, and being a "slut" and a "whore" by engaging in untoward sexual behaviors while in a committed relationship with them. These statements were knowingly and intentionally false or made with reckless indifference to the truth.

**ANSWER: Ms. VanSingel denies the allegation.**

41. A person who heard the Defendants' statements would reasonably understand them to assert that Plaintiff had engaged in behaviors evidencing a lack of chastity, which amounts to defamation per se at Michigan law.

**ANSWER: Ms. VanSingel denies that any such interpretation is proximate to any act of her.**

42. Defendant SEPECZI has also accused Plaintiff of attempting to engage in statutory rape of a 17-year-old, a criminal act, which is also defamation *per se*.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

43. The Defendants knew, or should have known, that the statements they made were false. In the alternative, the Defendants acted with reckless disregard to whether the statements were true. The Defendants therefore made these statements with bad faith and ill will.

**ANSWER: Ms. VanSingel denies that any statements she made were false; denies that she acted with reckless disregard to whether the statements were true; and denies that she, therefore, made any statements with bad faith and ill will.**

44. Plaintiff has suffered, and will continue to suffer, damage to his reputation and resulting social ostracization because of Defendants' false statements and therefore has demonstrated defamation *per quod*.

**ANSWER: Ms. VanSingel denies that any such damage is proximate to any act performed by her. Ms. VanSingel also denies that Defendant Bookie, Defendant Sepeczi and, specifically, Ms. VanSingel, made false statements.**

45. Reasonably careful persons in Defendants' position would not have falsely stated that Plaintiff had "cheated" or otherwise acted in a "slutty" or "whorish" manner when, in fact,

this had not occurred. The Defendants, therefore, were at least negligent in making the false statements identified herein.

**ANSWER: Ms. VanSingel denies the claim.**

46. Plaintiff has suffered severe, ongoing, and demonstrable emotional distress as a result of Defendants' actions towards him. He suffered a severe panic attack, and symptoms mimicking a heart attack, on the night of August 17, 2025. And, he has been diagnosed with adjustment disorder with mixed anxiety and depressed mood, DSM-5 code F43.23, stemming from the ongoing online bullying and harassment.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied. Ms. VanSingel also denies that such conditions, if any, were proximately caused by Ms. VanSingel.**

**COUNT 2 – FALSE IMPRISONMENT**

47. Plaintiff incorporates the factual statements and legal conclusions contained in the previous numbered statements as if fully restated herein.

**ANSWER: Ms. VanSingel incorporates paragraphs 1 through 46 of her answer as if fully restated above and herein.**

48. On August 17th, 2025, the Defendants conspired together with currently unknown persons to lure Plaintiff to VANSINGLE's apartment under false pretenses. Once there, they prevented him from leaving by threatening him with damage to his vehicle.

**ANSWER: Ms. VanSingel admits that she lured Plaintiff to her apartment but denies that she prevented Plaintiff from leaving or that she threatened him with damage to his vehicle.**

49. Defendants, by these actions, subjected Plaintiff to an unlawful restraint of his personal liberty and freedom of movement for an appreciable period of time.

**ANSWER: Ms. VanSingel denies the claim.**

50. Plaintiff was imprisoned; that is, he was detained or confined by the Defendants and thereby deprived of his personal freedom or freedom of movement.

**ANSWER: Ms. VanSingel denies the claim.**

51. The Defendants' restraint of Plaintiff's movement was carried out by an implied threat of physical force, given the presence of the numerous unnamed males at the apartment.

**ANSWER Ms. VanSingel denies the claim.**

52. The Defendants intended to restrain Plaintiff's movement and restrain him from leaving the apartment for an appreciable period of time.

**ANSWER: Ms. VanSingel denies the claim.**

53. The Defendants' restraint of Plaintiff's movement was against his will.

**ANSWER: Ms. VanSingel denies that she restrained Plaintiff.**

54. Plaintiff had neither committed a felony in Defendants' presence, nor had they been summoned by a peace officer to assist in making his arrest and, therefore, they had no right as a private citizen to detain his movement.

**ANSWER: Ms. VanSingel lacks the information to either admit or deny the claim, and therefore, it is denied.**

55. The Defendants' restraint of Plaintiff's freedom of movement was unlawful.

**ANSWER: Ms. VanSingel denies the claim.**

**COUNT 3 – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

56. Plaintiff incorporates the factual statements and legal conclusions contained in the previous numbered statements as if fully restated herein.

**ANSWER: Ms. VanSingel incorporates paragraphs 1 through 55 of her answer as if fully restated above and herein.**

57. Defendants conspired together to lure Plaintiff to VANSINGEL'S apartment under false pretenses, ambushed him with a video recorder, falsely accused him of being a "whore" and a "slut," falsely imprisoned him, and then proceeded to post the video of this online for the world to see.

**ANSWER: Ms. VanSingel denies the claim.**

58. All of this was done with the purpose and intent of causing Plaintiff extreme emotional distress and permanent damage to his reputation.

**ANSWER: Ms. VanSingel denies the claim.**

59. The Defendants' conduct was extreme and outrageous.

**ANSWER: Ms. VanSingel denies the claim.**

60. The Defendants' conduct has caused Plaintiff severe and ongoing emotional distress, as detailed previously.

**ANSWER: Ms. VanSingel denies that her conduct has caused Plaintiff extreme emotional distress and permanent damage to his reputation and lacks the information to either admit or deny the claim that Plaintiff has severe and ongoing emotional distress, and therefore, it is denied.**

61. The Defendants' conduct caused Plaintiff damages as described herein.

**ANSWER: Ms. VanSingel denies the claim.**

## AFFIRMATIVE DEFENSES

The defendant Ms. VanSingel alleges the following affirmative defenses:

1. The Court lacks subject-matter jurisdiction over some or all of the claims alleged in Plaintiff's complaint because the claim fails to meet the threshold of $75,000 for damages.

2. The Plaintiff's complaint fails to state a claim upon which relief may be granted.

3. The Plaintiff's claims are barred by the doctrines of laches, estoppel, preclusion, unclean hands, and/or mootness.

4. The proximate cause of Plaintiff's alleged injuries, if any injury exists, is not attributable to Defendants and/or Ms. VanSingel.

5. The proximate cause of Plaintiff's alleged injuries, if any injury exists, is attributable to the Plaintiff.

6. The proximate cause of Plaintiff's alleged injuries, if any injury exists, is attributable to other causes or persons not alleged or identified in Plaintiff's lawsuit.

7. If there is negligence, then Plaintiff is contributorily negligent.

8. Plaintiff assumed the risk.

9. No duty exists or can be implied that arose between Defendants, and/or Ms. VanSingel, and Plaintiff as alleged in this lawsuit.

10. Any of Defendants' and/or Ms. VanSingel's alleged statements were subject to the fair-comment-on-matters-of-public-interest privilege, and/or the Uniform Public Expressions Protection Act, 2025 PA 52.

11. Defendants' and/or Ms. VanSingel's alleged statements were true or substantially true.

12. Any of Defendants' and/or Ms. VanSingel's alleged statements were pure opinion and not intended or perceived to be based on fact.

13. Any of Defendants' and/or Ms. VanSingel's alleged statements were merely rhetorical hyperbole.

14. Any of Defendants' and/or Ms. VanSingel's alleged statements were protected by the First Amendment.

15. The Plaintiff consented to the alleged detention, if any, by Ms. VanSingel.

16. The Plaintiff had a reasonable means of escape from the alleged detention, if any, by Ms. VanSingel.

17. The Plaintiff explicitly or impliedly consented to the alleged conduct at issue by Ms. VanSingel that led to his emotional distress, if any.

18. Ms. VanSingel reserves the right to amend her Affirmative Defenses upon further investigation and information during discovery and these proceedings.

**DEMAND FOR JURY TRIAL**

Ms. VanSingel respectfully demands a trial by jury on all issues.

WHEREFORE, Ms. VanSingel demands judgment dismissing the complaint together with an award to her of costs, disbursements, and any other relief deemed just and equitable by the Court.

Respectfully submitted:
Core Legal PLC

Kellen J. Dykstra

Dated: 8/31/26

Kellen J. Dykstra (P86491)
Attorney for Defendant